UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 SEP 25 PM 2: 34

CLERK
BY_____ KP
DEPUTY CLERK

| | |
|---|---|
| MARTA YOLANDA PORTILLO VASQUEZ,<br>Petitioner,<br><br>v.<br><br>JONATHAN TUREK, Interim Superintendent,<br>Chittenden Regional Correctional Facility,<br>South Burlington, Vermont;<br>PATRICIA HYDE, Field Office Director;<br>MICHAEL KROL, HSI New England Special<br>Agent in Charge; TODD LYONS, Acting<br>Director U.S. Immigrations and Customs<br>Enforcement; KRISTI NOEM, U.S. Secretary<br>of Homeland Security; PAMELA J. BONDI,<br>U.S. Attorney General,<br>Respondents. | Case No. 2:25-cv-741 |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Marta Yolanda Portillo Vasquez brings this petition for a writ of habeas corpus, alleging her arrest at her scheduled biometrics appointment violates 8 U.S.C. § 1231, the Due Process Clause of the Fifth Amendment, and the Fourth Amendment. (Doc. 1 at 1–2, 5.) Petitioner seeks her immediate release to fulfill the requirements of a Petition for T Nonimmigrant status and pending the adjudication of her application. (*Id.* at 7.)

Respondents filed a response in opposition, arguing that 8 U.S.C. §§ 1252(a)(5) and 1252(g) strip this court of jurisdiction over her petition and, in the alternative, that Petitioner's detention is authorized by statute and does not violate the Fourth or Fifth Amendments. (*See* Doc. 7 at 1–2, 4.)

The court granted a Temporary Restraining Order ("TRO") on September 5, 2025 precluding Respondents from removing Petitioner from the District of Vermont pending further court order. On September 18, 2025, the court heard oral argument on whether to extend the TRO

and on the merits of Petitioner's habeas claim. Arguments were presented during the hearing that were not raised in the original pleadings. To allow the court time to consider the jurisdictional and constitutional issues raised in this case, the court ordered an extension of the TRO on September 19, 2025 until a decision on the merits of the habeas petition is issued or September 25, 2025 at 5:00 PM, whichever is earlier.

**Facts**

Petitioner is a citizen of El Salvador and has lived in this country for approximately twenty years with her three children. (Doc. 1 at 4.) She entered the United States without inspection around late 2005 or early 2006. (*Id.*; *see* Doc. 7 at 2.) U.S. Border Patrol agents detained her at the border for processing before releasing her. (Doc. 7 at 2.) Respondents allege that Petitioner was served with a Notice to Appear for a hearing before an Immigration Court in January of 2006. (*Id.*) Both parties agree that on January 30, 2006 an Immigration Court ordered Petitioner removed *in absentia* from the United States. (*Id.*; *see also* Doc. 1 at 4.) This is a final order of removal. (Doc. 7 at 2.)

On March 14, 2025, Petitioner filed a Petition for T Nonimmigrant Status ("T-Visa"), which included an Application for T Nonimmigrant Status and an Application for Advance Permission to Enter as a Nonimmigrant. (Doc. 1 at 5.) A T-Visa is a type of visa created by Congress for survivors of human trafficking. The applicants must demonstrate they are a victim of a severe form of trafficking, they are physically present in the United States at the time of the application is filed, that they have complied with reasonable requests for assistance from law enforcement in the investigation into the trafficking, and they would suffer severe hardship if they were to be removed. C.F.R. § 214.202(a)–(d). Applicants who are subject to final orders are removal are welcome to apply for the T-Visa. C.F.R. § 214.204(b)(2). Petitioner asserts the basis of her T-Visa petition is that she was "recruited, harbored, and coerced for the purpose of

involuntary servitude," and her presence in the United States is on account of being trafficked. (*Id.*)

On August 8, 2025, Petitioner received a biometrics appointment notice scheduled for August 28, 2025 at 3:00 PM. (*Id.*) The biometrics appointment and fingerprinting are required steps in fulfilling the T-Visa process and obtaining a bona fide determination.[*] When Petitioner arrived at her biometrics appointment to be fingerprinted, Immigration and Customs Enforcement ("ICE") agents arrested and detained her. (*Id.*) Petitioner is currently detained at the Chittenden Regional Correctional Facility in Vermont. (Doc. 7 at 2.)

## Analysis

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (plurality opinion) (quoting U.S. Const. art. I, § 9, cl. 2). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention . . . ." *Kapoor v. DeMarco*, 132 F.4th 595, 610 (2d Cir. 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

Subject to some exceptions, federal district courts are authorized to grant the writ of habeas corpus within their respective jurisdictions. *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. 2241(a), (c)(3)). Respondents argue that 8 U.S.C. § 1252(a)(5) and 1252(g) divest this court of jurisdiction over Petitioner's claims.

## I. Jurisdiction

Congress grants the courts statutory authority to hear writs of habeas corpus. *See* 28 U.S.C. § 2241; *see also Mahdawi v. Trump*, 781 F. Supp.3d 214, 223 (D. Vt. 2025). In the context of immigration cases, Congress has amended the Immigration and Nationality Act ("INA") to

---

[*] The parties provided additional factual assertions and arguments at the hearing on September 18, 2025 that were not included in their initial filings.

contain "jurisdiction stripping" provisions that limit federal district courts' authority to hear challenges to "administrative decisions concerning removal of non-citizens." *Mahdawi*, 781 F. Supp. 3d at 224; *see also* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009; REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 302.

Respondents rely on two statutory provisions for their jurisdictional arguments. The court will consider them in turn. Each section addresses the preliminary question of whether the statutory language prevents the district court from reviewing Ms. Portillo Vasquez's arrest and subsequent detention.

**A. Section 1252(a)(5)**

Respondents assert 8 U.S.C. § 1252(a)(5) divests the court of jurisdiction to hear Ms. Portillo Vasquez's claims. (Doc. 7 at 4–5.) Section 1252(a)(5) states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).

The Second Circuit has clarified that Section 1252(a)(5)'s bar on jurisdiction "applies equally to . . . indirect challenge[s]" to orders of removal. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). *Delgado* recognized, however, that a "suit brought against immigration authorities is not *per se* a challenge to a removal order." *Id.* The jurisdiction of a district court will depend on the type of relief sought. *Id.* The *Delgado* court cited the Sixth Circuit's decision in *Kellici v. Gonzales*, 472 F.3d 416 (6th Cir. 2006), to note that the district court, instead of a court of appeals, has jurisdiction where "plaintiffs' 'habeas petitions challenged only the constitutionality of the arrest and detention, *not* the underlying administrative order of removal.'" *Delgado*, 643 F.3d at 55 (alteration in original) (quoting *Kellici*, 472 F.3d at 420). Because Ms.

4

Portillo Vasquez's habeas petition challenges only her arrest and detention, not the final order of removal, Section 1252(a)(5)'s bar does not strip this court's jurisdiction.

Further, in *Delgado*, the petitioner brought a mandamus action to force the U.S. Citizenship and Immigration Services ("USCIS") to determine the merits of a pending I-212 application. 643 F.3d at 54. The petitioner had been arrested by immigration authorities pursuant to a reinstated final order of removal. *Id.* Receiving an I-212 waiver was a "necessary prerequisite" for the petitioner in this case to have a successful adjustment of status. *Id.* at 55. The Second Circuit held that an "adjustment-of-status challenge is inextricably linked to . . . [a] removal order." *Id.* (quoting *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082–83 (9th Cir. 2010)).

By contrast, Ms. Portillo Vasquez's T-Visa application is not inextricably linked to the validity of her removal order. *See, e.g., S.N.C. v. Sessions*, 18 Civ. 7680 (LGS), 2018 WL 6175902, at *4 (S.D.N.Y. Nov. 26, 2018). Had th petitioner in *Delgado* received the I-212 waiver, the removal order would be rendered void. *Delgado*, 643 F.3d at 55. Ms. Portillo Vasquez's removal order was issued by an Immigration Court (Doc. 7 at 2) and is not subject to an automatic cancellation were she granted T Nonimmigrant Status. *See* 8 C.F.R. § 214.204(o)(2) ("An applicant who is the subject of an order of removal . . . issued by an immigration judge or the Board of Immigration Appeals . . . may seek rescission of such order by filing a motion to reopen and terminate removal proceedings with the immigration judge . . . ."); *S.N.C.*, 2018 WL 6175902 at *4. To cancel her removal order, Ms. Portillo Vasquez would need to file a motion to reopen and terminate the final removal order with an Immigration Judge, who would have discretion to either deny or grant that motion. *See* 8 C.F.R. § 214.204(o)(2). Since this is not a case that would automatically nullify her removal order if the T-Visa application were granted, this petition is not

an indirect challenge of a removal order. Section 1252(a)(5) does not prevent the court from exercising jurisdiction in this case.

### B. Section 1252(g)

Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Respondents assert Section 1252(g) eliminates this court's jurisdiction as to Petitioner's request for a stay of removal to prevent the Government from removing her from the District of Vermont. (Doc. 7 at 5.) In support, Respondents primarily rely on the Second Circuit summary order in *Troy ex rel. Zhang v. Barr*, 822 F. App'x 38 (2d Cir. 2020), which states that a "stay of removal is a request to delay the execution of a removal order," and is therefore barred by Section 1252(g). *Id.* at *39 (citing *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002)).

The Supreme Court has held that 1252(g) bars claims that the government is "selectively enforcing immigration laws against" noncitizens "in violation of their First and Fifth Amendment rights." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 474 (1999) ("*AADC*"); *see also Ozturk v. Hyde*, Nos. 25-1019, 25-1113, 2025 WL 2679904, at *2 (2d Cir. Sep. 19, 2025) (Menashi, J., concurring). In *AADC*, the Court specified that § 1252(g) is a "narrow" provision that applies only in three actions that the Attorney General may take: (1) commencing proceedings; (2) adjudicating cases; or (3) executing removal orders. *AADC*, 525 U.S. at 482. The Court further explained, "There are of course many other decisions or actions that may be part of the deportation process . . . ." *Id.* The mention of these three actions by Congress was not a "shorthand" to

6

include all claims arising from the removal process. *Id.*; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (reiterating that § 1252(g) is restricted to the three aforementioned actions).

In the present case, Petitioner is not challenging her removal proceedings, but, instead the process by which her arrest was effectuated. Habeas jurisdiction is allowed when the arrest occurred in violation of due process. As discussed below, Ms. Portillo Vasquez has raised important constitutional claims that support a finding of jurisdiction.

Further, Ms. Portillo Vasquez has not requested relief from her final removal order except for a stay of removal from this district while these proceedings are ongoing. (Doc. 1 at 7.) The TRO ordered that Ms. Portillo Vasquez shall not be removed from the District of Vermont pending a further decision from this court. (Doc. 2 at 2.) A federal court "always has jurisdiction to determine its own jurisdiction," including subject matter jurisdiction. *Brownback v. King*, 592 U.S. 209, 218–19 (2021) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)). To allow the court the ability to determine whether it has subject matter jurisdiction and, if so, whether habeas relief should be granted, the court ordered a temporary stay to preserve the status quo. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947).

## II. Habeas Corpus Review

Ms. Portillo Vasquez seeks habeas corpus relief based on alleged violations of her constitutional rights and of 8 U.S.C. § 1231.

### A. Substantial Claims

#### 1. 8 U.S.C. § 1231

Ms. Portillo Vasquez is being held pursuant to 8 U.S.C. § 1231(a), which provides for the detention and removal of noncitizens with removal orders. The statute states that immigration authorities have a ninety-day period to remove noncitizens from the United States after they are ordered removed (the "removal period"). *Id.* § 1231(a)(1)(A)–(B). A noncitizen may be detained

beyond the removal period if they are deemed inadmissible under Section 1182. *See id.* § 1231(a)(6); 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

An Immigration Court ordered Ms. Portillo Vasquez removed *in absentia* in January 2006. (Doc. 1 at 4; Doc. 7 at 2.) She is currently being detained nineteen years later. Her detention beyond the ninety-day removal period, however, does not violate Section 1231(a) because she is inadmissible under Section 1182. Ms. Portillo Vasquez conceded that she entered the United States without inspection in early 2005 or late 2006. (Doc. 1 at 4.)

Respondents further contend Ms. Portillo Vasquez's pending T-Visa application has no bearing on her removability under federal regulation. (Doc. 7 at 6–7); *see also* 8 C.F.R. § 214.204(b)(2)(i) ("The filing of an Application for T Nonimmigrant Status has no effect on DHS authority or discretion to execute a final order of removal . . . ."). Respondents contend that Petitioner's habeas petition must fail because Petitioner has not alleged that USCIS has made a bona fide determination of her T-Visa application. (Doc. 7 at 7.) As discussed further below, Petitioner has been unable to receive a bona fide determination because immigration authorities detained her at her biometrics appointment. While the court agrees that federal regulations suggest the pending T-Visa application may not bear upon her removability, Petitioner has raised due process claims regarding the circumstances of her arrest that compel further review.

### 2. Due Process Violations

The Due Process Clause of the Fifth Amendment protects the right of "any person" from "be[ing] deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Fifth Amendment entitles noncitizens to due process of the law in removal proceedings. *See Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)

8

("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").

Ms. Portillo Vasquez has raised a procedural due process claim, alleging her arrest violates the Fifth Amendment because she was detained at her mandatory biometrics appointment, preventing her from completing a necessary step in her T-Visa application. (Doc. 1 at 5.) She asserts her appointment had been scheduled by immigration authorities after filing her T-Visa application, but she was detained when she arrived by ICE officers. (*Id.*)

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). After a petitioner has identified a property or liberty interest, the court must determine whether constitutionally sufficient process has been provided. *Id.* at 332–33. This determination is made using the three-factor balancing test provided in *Mathews*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

### a. Liberty Interest

Respondents argue there is no protected liberty interest in Petitioner's pending T-Visa application. (Doc. 7 at 11.) In support, Respondents rely on district court cases that have found no constitutional liberty or property interest in waiting for T-Visa applications to be adjudicated. (*Id.* at 11–12); *see, e.g., Islam v. Barr*, 394 F. Supp. 3d 279, 286 (E.D.N.Y. 2019); *Suarez-Reyes v. Williams*, No. CV-20-01222-PHX-MTL (JFM), 2020 WL 3414781, at *2 (D. Ariz. June 22,

2020); *Marcelo Rojas v. Moore*, CASE NO. 19-20855-JLK, 2019 WL 3340630, at *2 (S.D. Fla. Mar. 26, 2019); *Nicholas L.L. v. Barr*, File No. 1 9-cv-02543 (ECT/TNL), 2019 WL 4929795 (D. Minn. Oct. 7, 2019). Other district courts, however, have found a cognizable interest in noncitizens remaining physically present in the United States when they have a pending T Nonimmigrant application. *See, e.g., Fatty v. Nielsen*, CASE NO. C17-1535-MJP, 2018 WL 3491278, at *2 (W.D. Wash. July 20, 2018) (finding that petitioner, who has submitted a T-Visa application, "has a liberty interest in preventing his removal"); *S.N.C.*, 2018 WL 6175902, at *6 ("Petitioner raises substantial claims as to whether her due process rights are infringed if she is removed before her [T-Visa application is] adjudicated."); *Sergio S.E. v. Rodriguez*, Civil Action No. 20-6751 (JMV), 2020 WL 5494682, at *7 (D. N.J. Sep. 11, 2020) ("Petitioner has demonstrated that he is likely to establish a constitutionally protected interest in applying for a T Visa." (footnote omitted)).

Ms. Portillo Vasquez's case does not require the court to resolve these discrepancies. The articulable liberty interest here is to be free from undue interference while undertaking the mandated process of filing a T-Visa application and receiving a bona fide determination. *See, e.g., S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 411 (S.D.N.Y. 2018) (finding petitioner made a "strong showing" that she is likely to succeed on the merits of her due process claim because "Petitioner has a right to make the [visa] applications and have them fully adjudicated *without undue interference*." (emphasis added)); *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004) ("The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference.").

The current case is a unique set of circumstances where the authorities have mandated a process which must be used to access discretionary relief. The authorities then use that very process to detain people where and when they know they will be present and effectively deny them

access to that process. To have her T-Visa application adjudicated, Ms. Portillo Vasquez needs to be fingerprinted to receive a bona fide determination, to verify her identity, and to complete the required background check. After filing her T-Visa application, immigration authorities scheduled Petitioner's biometric appointment. (Doc. 1 at 5.) At her appointment, before she could complete her fingerprinting, Immigration and Customs Enforcement detained her. (*Id.*) Now, Petitioner remains in custody without access to the facilities to complete her biometrics appointment and is facing removal.

### b. Risk of Erroneous Deprivation

The second *Mathews* factor, "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" also weighs in Ms. Portillo Vasquez's favor. *Mathews*, 424 U.S. at 335. At this stage in the analysis, the primary interest is of the detained individual, not the Government. *See Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020). Here, the procedures surrounding Ms. Portillo Vasquez's arrest increased the risk of error.

First, these procedures impacted her ability to access the process that is required for her to be even considered for discretionary relief. When Ms. Portillo Vasquez arrived at the necessary biometrics appointment, she unwittingly surrendered herself to detention before being able to complete the prerequisite steps to have her T-Visa adjudicated. If Petitioner had been fingerprinted and her appointment had not been interfered with prior to her arrest, there would be a different question before the court.

Further, the court is not persuaded by Respondents' position that Petitioner can proceed with her visa application process while detained. The Government could provide no specific information on how Petitioner would access her biometrics appointment while incarcerated. Ms.

Portillo Vasquez faces imminent removal, and, if she is removed, it is unlikely she would be able to access the biometrics appointment needed to proceed with her T-Visa application.

### c. Burden on the Government

The Court finds that granting Ms. Portillo Vasquez's petition for habeas corpus relief to allow her to complete her required biometrics appointment would preclude any erroneous deprivation of her liberty interests at a minimal cost to the government. The Government has not identified any burden it would bear if Ms. Portillo Vasquez's petition were granted. The court recognizes that granting Ms. Portillo Vasquez's petition for habeas corpus could delay immigration proceedings and require another biometrics appointment to be scheduled. Considering the risk to Ms. Portillo Vasquez's personal liberty, the nominal burden on the government is outweighed.

Having considered all the *Mathews* factors, the court finds that each weigh in favor of granting Ms. Portillo Vasquez's habeas petition to allow her to complete her biometrics appointment without interference. On the facts and specific circumstances, this is what due process demands. Immigration authorities have created a process by which noncitizens and immigrants can apply for lawful status. When the requirements of that procedure are used to prevent the person from accessing and applying for that relief, there is a chilling effect on due process.

### 3. Fourth Amendment

Ms. Portillo Vasquez has also raised potential Fourth Amendment violations. (Doc. 1 at 5.) The court need not consider this question because the due process claim resolves the issues in the case. *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("It is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." (citation modified)); *Belmontes v. Ayers*, 551 F.3d 864, 866 (9th Cir. 2008)

(Reinhardt, J., concurring) ("Where the resolution of one constitutional issue will dispose of a case, thus obviating the need to reach a second, it is the general jurisprudential practice not to decide both questions simply in order to provide an alternative basis for the court's decision. Although it may be within our discretion to resolve more than one constitutional issue when it is unnecessary to do so, courts do not ordinarily act contrary to the well-established rule that we avoid deciding constitutional questions if we can arrive at the same result without reaching them.").

## Conclusion

Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is GRANTED. Petitioner shall be immediately released.

DATED at Rutland, in the District of Vermont, this 25th day of September 2025.

Mary Kay Lanthier
United States District Court Judge